Catron, Judge,
delivered the opinion of the court. Philips5 executors got judgment in the Davidson circuit *106 court against Sappington and Hickman, who prosecuted their appeal in the nature oí a writ of error to this court; but before errors assigned, Sappington, one of the plaintiffs in error, died intestate, nor has he any personal representatives. At the last term of this court the death of Sappington was suggested, and now it is moved by the counsel for the defendants in error, to have judgment entered, that the writ of error be abated, and a remitti-tur ordered to issue, to remit the cause to the court below.
In England, the writ of error was a writ issuing out of Chancery, and if there were more plaintiffs in error than one, the writ was joint, and abated by the death of either plaintiff before errors assigned, but not if the death happened after errors assigned. Howard vs. Pitt, 1 Salk. 261. Pennoyer vs. Bruce, 1 Lord Ray. 244. 1 Salk. 3, 9.
But before the court can act, it must appear of record that one of the plaintiffs is dead; this being suggested, and not denied, an entry is made declaring the suit abated; yet before the defendant in error, if he had been plaintiff below and recovered, can have the benefit of hits judgment, he is compelled to have a remittitur entered in the court of errors remitting the record to the inferior court from whence the writ of error was prosecuted; before which notification to the court below, no execution can issue from that court, notwithstanding the abatement of the writ of error. Tidd’s Prac. 1134. 1 Salk. 261,319. 1 Lord Ray. 244.
By the English practice, so soon as the cause is remit-ed to the court from which the writ of error was prosecuted, an execution may immediately issue against all the defendants without noticing the death of one of the defendants below. The execution must be as broad as the judgment, and against all the parties thereto, otherwise it would be subject to be quashed; yet it cannot be levied upon the goods in the hands of the executors of the deceased, or upon his lands descended to his heirs.
This was the settled English law previous to the American revolution, which was declared in force and use in the province of North Carolina,and in that and this stale-. *107 by the ants of 1715, ch. 31, see. 6; 1778, ch. 5, and const. of Ten. art. 10, sec. 2. And this is undoubtedly the law of this court, unless repealed or altered by some statute of North Carolina or this state, which are binding upon the court.
The legislature of North Carolina have, at three several times, legislated upon the subject of abatement; by the act of 1785, ch. 2, sec. 7, it is provided that no appeal in any cause or court should abate by the death of cither plaintiff or defendant, but that the same may be proceeded on by application of the heirs, executors or assigns of either party.
The act of 1786, ch. 14, sec. 1, is an amendment and extension in its application of the act of 1785, and provides, that in future, it shall be lawful for the heirs, executors, administrators or- guardians, to carry on every suit en-action in court after the death of either plaintiff or defendant, which may be proceded on by application, in the some manner appeals are carried on by the act of 1785, above recited.
By the above provisions, the English common law was altered in this; that the representatives of either party could come forward and revive the suit after the death of a litigant party; a difficulty, however, s'oon presented itself under these statutes. When should the representative be compelled to come forward? To amend the statutes in this respect, the act of 1789, ch. 57, sec. 7, was passed, which provides, “That where a term of the court shall intervene between the death of any plaintiff or defendant, and the qualification of the executors or administrators of such deceased plaintiff or defendant, the intervention of such term shall not work any abatement or discontinuance of such suit.”
This statute explains the former provisions, and points out the time within which the representative shall come forward and cause himself to be made a party; if he fails to do so during the second term, the suit abates as it did at the common law. Where there is no personal representative, as in this £ase, (and it is admitted that there is *108 not any probability there ever wilbbe,) the above statutes have no bearing thereon, further, than to restrain the court from ordering the suit to be abated at the first term after the death of the plaintiff in error; but at the second term ijjg cour); is bound by the British practice above recited, and must cause the abatement to be entered, and a remit-titur to be sent to the court below; or which is the same thing in our practice, (where a certified copy of the record it sent up,) a copy of the order declaring the suit abated by reason of the death of the plaintiff in error, Sappington, is sent to the court below instead of remitting the record itself with the certificate.
It is with great caution that the court, should in any case, depart from the rules of practice established by the common law; nor is it apprehended in this case, that any other consistent course, than that pointed out by the common law of abating the writ, can be taken; Hickman, the co-plaintiff in error, does not propose to assign errors; nor does he ask that privilege of the court; neither does he object to the writ of error being abated: the defendants in error urge the court that the abatement be entered, and certified to the circuit court, before which being done, that court has no power to proceed in the cause. Pennoyer vs. Bruce, 1 Lord Ray.
I have no doubt of the power of the court to make the order prayed for; and am strongly inclined to the opinion that this is the only means by which they can dispose of the cause.
It has been supposed that the act of 1789, ch. 57, sec. 5, which declares, “that survivorship, where there are joint obligors, on tbe death of one, shall take place against his executors,” has some bearing on this case: To which it might be answered, that obligors, and not obligees, are the objects of the statute; which in no case can have any influence on a plaintiff in a cause who is compelled to pursue his remedy according to the rules of the common law. And notwithstanding the act of 1784, ch. 22, sec. 6, abolishing joint tenancies and survivorship, between owners of chattels jointly, yet the surviving joint tenant *109 of such chattel, it is apprehended, has the sole remedy to sue for the chattel and cannot join with the executor of the deceased co-tenant.
The rule in such case is, that the remedy survives, although the executor is entitled to his portion of the chattel or its value, when recovered - by the survivor. Kemp vs. Andrews, Carthew 170. Martin vs. Crump, 1 Lord Ray. 340. Smith vs. Farrow, 2 Term Rep. 476. Bernard vs. Wilcox, 2 Johns. Ca. 374. 1 Com. Con. 327. Com. Dig. Mercnt D. 1 Chitty’s Pleadings, 53,4 and 5. In prosecuting remedies, therefore, our acts of 1789 and 1784, do not alter the common law practice; nor is it believed they have (the slightest bearing on the present case.
It is furthermore supposed, that this court has the power, on the death of Sappington being suggested, to drop him, and give judgment against Hickman alone; and consequently against the joint securities of Hickman and Sappington, for prosecuting the writ of error. By the act of 1809, ch. 42, sec. 27, this court is to give such judgment as the court below ought to hove given upon the verdict of the jury, who find that Sappington and Hickman had not paid the debt in the declaration mentioned. What judgment ought to have been given upon this verdict in the court below? It is a joint finding against S. and II. upon a joint declaration and plea: the judgment could only be, that the plaintiffs recover against S. and H. the debt in the declaration mentioned. What judgment can this court give? It has only power to examine errors; if there is no error perceived, it must affirm and adopt the judgment given below, or send the cause to that court to be proceeded upon. This court only pronounces its opinion upon the errors committed by the inferior court, and revises the opinion thereof; if the errors are pointed out by assignment, we take no notice of the death of either or all the parties. It is, in truth, a matter between the inferior and revising courts, rather than the parties to the cause, who are in no default for the mistake of the law by the judge below; and hence it is, that if Sappington had, before his death, assigned errors, the court, without noti *110 cing his death, would have examined them, and pronounced judgment of affirmance, as they did in Stubblefield and others vs. Dougherty, at the last term of this court at Sparta. — S. one of the plaintiffs in error, died after errors assigned, and the judgment was affirmed without his representatives being before the court, and, as in the present case there were none. But before errors are assigned, (which are in the nature of a declaration,) there is no issue for the court to pass upon — nor are there any competent parties to make up such issue; for were Hickman singly to attempt it, his declaration would be a departure from the writ, which is joint.
That a single judgment can be given against Hickman alone,upon thisyomi verdict and judgment in the circuit court against him and Sappingion — and that execution can issue singly against Hickman, upon the affirmance in this court, is surely a proposition not warranted by any precedents in the English law, nor can it be perceived that the statutes of North Carolina or this State confer any such power upon this court. It is therefore apprehended, that were the court to give such judgment, they would not pronounce the law as they found it, but would be making a new one, suited to a case of supposed hardship. Let the writ of error be abated.